IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID SCHUPBACH, et al.,**

    **Plaintiff,**

                              Case No. 11-cv-115
    v.                          JUDGE GREGORY L. FROST
                              Magistrate Judge Norah McCann King

**ROBERT M. GATES, Secretary,**
**Department of Defense,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss ("Defendant's Motion") (ECF No. 2), Plaintiffs' Memorandum in Opposition to Defendant's Motion (ECF No. 22), Plaintiffs' Supplement to their Memorandum in Opposition (ECF No. 23), Defendant's Reply Memorandum (ECF No. 24), Plaintiffs' Second Motion to Supplement their Memorandum in Opposition to Defendant's Motion, *Instanter* (ECF No. 28). For the reasons that follow, the Court **GRANTS** Defendant's motion and **GRANTS** Plaintiffs' motion.

## I. Background

Plaintiffs, Ricky Oltman and David Schupbach, were employed by Defendant in the Department of Defense Logistics Agency. On November 13, 2007, Plaintiffs filed a class action complaint with their employer's Equal Employment Opportunity ("EEO") Department alleging sex and age discrimination based on the class's non-selection for Job Opportunity Announcement (JOA) DSCC-07-3119. There were originally five members of the class complaint; however, two of the members withdrew prior to the filing of the formal complaint. Plaintiffs remained as members of the class with Plaintiff Oltman acting as the class agent and C.

1

Philip Henry, President, IFPTE Local 7, acting as their representative.

On July 1, 2008, Administrative Judge Elliot Porter dismissed Plaintiffs' class complaint for failure to satisfy the legal requirements of a class complaint. Plaintiffs proceeded to pursue their complaints as individual complaints while retaining Henry as their representative. Plaintiffs separately withdrew their formal complaints of discrimination in July 2009.

In April 2010, Plaintiffs petitioned their respective Administrative Judges requesting that their withdrawals be rescinded and their cases reopened so they could file their individual complaints in a United States district court. Both Administrative Judges denied Plaintiffs' requests. In July 2010, Plaintiffs contacted the Defense Logistics Agency Land and Maritime EEO Manager, Charles Palmer, to request that the Agency reopen their individual complaints. Plaintiffs claimed that they did not understand that by withdrawing their administrative complaints they were also waiving their rights to file their claims in federal district court.

On August 10, 2010, EEO Manager Palmer contacted Plaintiffs and requested that they provide evidence that they did not knowingly waive their rights. Counsel for Plaintiffs responded to Palmer on September 29, 2010, asserting that the forms that Plaintiffs signed in July 2009 did not state they were waiving their rights to subsequently file their claims in court. On October 4, 2010, Palmer informed Plaintiffs that the Agency would not reopen their individual complaints.

On February 11, 2011, Plaintiffs filed this action, alleging claims for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). On April 18, 2011, Defendant filed Defendant's Motion, arguing that he is entitled to dismissal of this action because Plaintiffs fail to state a

claim upon which relief may be granted. Specifically, Defendant argued that Plaintiffs failed to exhaust their administrative remedies and that their claims are barred by the applicable statute of limitations.

On May 11, 2011, Plaintiffs requested and were granted an extension of time in which to respond to Defendant's Motion. On May 19, 2011, Plaintiffs again requested an extension of time in which to respond to Defendant's Motion. In this second motion, Plaintiffs informed the Court that they needed sixty days to conduct limited discovery so that they could sufficiently respond to Defendant's Motion. Plaintiffs indicated that they were in need of the form signed by Plaintiffs that was identified in one of the exhibits to Defendant's Motion that Defendant claimed showed that Plaintiffs knowingly waived their rights to file an action in federal court. This Court granted Plaintiffs' motion for an extension of time for the purpose of engaging in discovery.

Defendant had not responded to Plaintiffs' motion for an extension of time to conduct discovery before the Court granted that motion, and indeed, informed the Court through a motion for a protective order that it opposed Plaintiffs' request to engage in discovery. (ECF No. 13.) Defendant indicated that it voluntarily provided the document that Plaintiffs claimed they needed in discovery. On July 25, 2011, this Court granted Defendant's motion for a protective order, concluding that Plaintiffs did not need any further information from Defendant to oppose Defendant's Motion. (ECF No. 18.)

On August 4, 2011, Plaintiffs filed a motion to amend the complaint (ECF No. 21), which was unopposed. On September 7, 2011, the Court granted Plaintiffs' motion to amend. (ECF No. 25.) The amended complaint added the statement: "Administrative exhaustion and timeliness requirements are subject to equitable tolling and equitable estoppel." (ECF No. 21 ¶3.)

On August 8, 2011, Plaintiffs filed their Memorandum in Opposition to Defendant's Motion (ECF No. 22), and on August 15, 2011, Defendant filed its Reply Memorandum in Support of its Motion (ECF No. 24).

On October 11, 2011, Plaintiffs filed their Second Motion to Supplement their Memorandum in Opposition to Defendant's Motion, *Instanter*. (ECF No. 28).

## II. Standard

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant and Plaintiffs, however, present numerous documents in support of their arguments for or against dismissal of this action. As Plaintiffs correctly note, when matters outside of the pleadings are relied upon, the Court may convert a motion to dismiss to one for summary judgment. Rule 12 of the Federal Rules of Civil Procedure provides the mechanism for such a conversion:

> Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

Here, the Court finds that both parties have been given a reasonable opportunity to present all the material that is pertinent to Defendant's Motion. Indeed, "Plaintiffs request that the Court consider [Defendant's] Motion as one for summary judgment where the Plaintiffs have put forth factual evidence." (ECF No. 22 at 6.) Defendant does not oppose this conversion. Therefore, the Court will treat Defendant's Motion as one for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Plaintiffs' Motion

In Plaintiffs' Second Motion to Supplement their Memorandum in Opposition to

Defendant's Motion, *Instanter* (ECF No. 28), Plaintiffs request permission to supplement their memorandum with certain affidavits to support their position. The Court finds that it is necessary to permit Plaintiffs to file this supplement so that Plaintiffs have had a reasonable opportunity to present all of the material that they feel is pertinent to Defendant's Motion. Thus, the Court **GRANTS** Plaintiffs' motion.

### IV. Defendant's Motion

In their amended complaint, Plaintiffs allege that a female who is significantly younger than Plaintiffs received a promotion for which both Plaintiffs applied and for which they were both more qualified than the recipient of the promotion. Defendants move for judgment on both Plaintiffs' claims. Plaintiffs argue that their claims should survive Defendant's Motion, or alternatively, that the Court should stay this action pending a recent request by them to the EEOC's Office of Federal Operations to reopen the administrative process in which they were previously engaged.

**A. Discrimination**

Plaintiffs allege age discrimination under the ADEA and gender discrimination under the Title VII. Plaintiffs are both white males and, therefore, they are not members of any category protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1). Plaintiffs, however, may claim reverse discrimination by showing, *inter alia*, that their employer "is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (citations omitted). Defendant argues that Plaintiffs' claims are not properly before the Court because they have failed to exhaust their administrative remedies and because their complaint is untimely.

**1. Exhaustion**

Title VII and the ADEA both require exhaustion of administrative remedies.[1] "The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the [Equal Employment Opportunity] Commission [("EEOC")] will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.'" *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992) (quoting *Parsons v. Yellow Freight Systems, Inc.*, 741 F.2d 871 (6th Cir. 1984) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974))). Thus, courts have held that an employee who does not initially follow the administrative steps outlined in the Code of Federal Regulations is precluded from bringing an action before a federal court. *See e.g., Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). With regard to the steps that Plaintiffs, as federal employees, were required to take to ensure administrative exhaustion of their claims, the Honorable Walter H. Rice recently explained:

> The steps federal employees must take, in order to exhaust their administrative remedies before bringing Title VII suits, are as follows:
>
> > . Make pre-complaint contact with EEO counselor within forty-five days of the allegedly discriminatory incident (29 C.F.R. § 1614.105(a)(1));

---

[1]Plaintiffs do not dispute that they were required to exhaust their administrative remedies for their ADEA claim to be filed in this Court. By way of explanation, Plaintiffs had two options to pursue their age discrimination claims, *i.e.*, the administrative route or filing directly in federal district court. *See Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (explaining the election of remedies). Plaintiffs here chose to pursue an administrative remedy when they sought EEO counseling and each filed a formal complaint of discrimination before the Equal Employment Opportunity Commission. Even though Plaintiffs selected the administrative route, they could have still filed an ADEA complaint of age discrimination in district court if they followed the requirements of 29 U.S.C. § 633a. Plaintiffs, however, did not follow the requirements provided for in that statute and, therefore, were required to exhaust their administrative remedies.

> . File individual complaint of discrimination with the allegedly discriminatory agency (29 C.F.R. § 1614.106(a)); and
>
> . Receive final agency decision (29 C.F.R. § 1614.110(a)).

*Lee v. Potter*, No. 3:08cv344, 2010 U.S. Dist. LEXIS 11730, at *10 (citing *Lockett v. Potter*, 2008 U.S. App. LEXIS 923, *3, 259 F. App'x 784 (6th Cir. Jan. 9, 2008)).

Plaintiffs separately withdrew their individual formal complaints of discrimination before receiving a final agency decision. Plaintiffs signed and submitted the EEOC Cleveland Ohio Field Office's standard Withdraw of Formal Complaint form, which states:

> I _____, do hereby voluntarily withdraw my formal Equal Employment Opportunity complaint, EEOC Hearing No. _____, Agency Case No. _____. I understand that by withdrawing my complaint I waive my rights to a hearing, to a final agency decision, or to further appeal, and that this complaint is now closed.

(ECF Nos. 2-1, 2-2.)

In *Lee v. Potter*, Judge Rice explained that withdrawal of a formal EEOC complaint before a final agency decision is rendered results in a failure to exhaust:

> In the present case, the Plaintiff withdrew his individual complaint of discrimination prior to receiving the final agency decision. Thus, the Regulations do not provide a means for him to file a civil action in a United States District Court, as he has attempted to do.

*Id.* at *11 (dismissing complaint for failure to exhaust). *See also Bowers v. Nicholson, Secretary, Dep't of Veterans Affairs*, 271 F. App'x 446, 448-49 (5th Cir. 2008) (complainant's submission of a withdrawal of complaint form prevented him from filing in federal court for failure to exhaust his administrative remedies even though he claimed that he mistakenly signed the form and that he had told his EEO Counselor that he wished to continue pursuing his claims); *Smeltzer v. Potter*, No. 3:10-CV-00178-FDW-DSC, 2010 U.S. Dist. LEXIS 123407, at *6-8 (W.D. N.C., Nov. 19, 2010) ("Where a plaintiff voluntarily withdraws a complaint of

8

discrimination, the applicable regulations do not provide a means for review in the United States District Court."); *Gagnon v. Potter*, No. 3:05-CV-324RM, 2006 U.S. Dist. LEXIS 54048, at *9 (N.D. Ind., July 19, 2006) ("In light of the differences between the administrative process under Title VII and the ADEA, and the prudential reasons for requiring parties to exhaust their administrative remedies, a plaintiff who has voluntarily abandoned her claim cannot file a suit in district court under Title VII").

Plaintiffs do not dispute that they failed to exhaust their administrative remedies and instead argue that they were unaware of the consequences of their failure to exhaust. Specifically, that withdrawal of the administrative complaint would prevent them from filing a complaint in this Court. Thus, Plaintiffs assert that they did not knowingly waive their rights to file this action. Plaintiffs request that the Court invoke the doctrine of equitable estoppel to preclude a finding that they failed to exhaust their administrative remedies.

Plaintiffs contend that this Court should invoke the doctrine of equitable estoppel because Defendant's EEO Officer failed to explain to Plaintiffs that their withdrawal of the formal administrative complaint waived their rights to judicial action and because the EEOC withdrawal form did not "expressly explain[] its effect on private suit rights." (ECF No. 7, 9.) The Sixth Circuit explains that to successfully invoke the doctrine of equitable estoppel, a claimant must show:

(1) conduct or language amounting to a representation of material fact;

(2) awareness of true facts by the party to be estopped;

(3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

(4) unawareness of the true facts by the party asserting the estoppel; and

9

(5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007) (citing *Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993) (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991))). "[E]quitable estoppel requires affirmative steps or action on the part of a defendant. . . [and] plaintiffs invoking equitable estoppel must establish due diligence." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009). The Sixth Circuit has given examples of the type of affirmative action that a defendant must take before a plaintiff can invoke equitable estoppel:

> Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations.

*Id.* at 428 (quoting *Bridgeport Music, Inc., et al. v. Diamond Time, LTD.*, 371 F.3d 883, 891 (6th Cir. 2004)).

In the instant action, Plaintiffs do not even allege affirmative steps or actions or the part of Defendant. Plaintiffs claim that Defendant's alleged inaction amounted to a representation of material fact and that the EEOC withdrawal form did not provide Plaintiffs with actual notice of the consequences of the withdrawal. Instead of directing their argument toward any alleged affirmative steps taken by Defendant, Plaintiffs argue that:

> The [EEO] counselor is to provide notice of rights in writing, including, but not limited to, the right to file a lawsuit. If the withdrawal form is not clear, at the very least, the counselor should explain that filing the form waives rights to judicial action. Such did not occur in this case. In this case, the Plaintiffs had no actual notice that filing the Withdrawal Form would effectively eviscerate their causes of action.

(ECF No. 22 at 7.) Plaintiffs rely on 24 C.F.R. § 7.12(a) and (a)(3) for these propositions.

Section 7.12 of Chapter 24 of the Code of Federal Regulations requires Defendant's EEO Counselor to advise Plaintiffs, in writing, of their rights and responsibilities. There is no dispute that Plaintiffs received a written notice of their rights and responsibilities on November 13, 2007 from Defendant's EEO Counselor. There is also no dispute that the November 13, 2007 notice complies with 24 C.F.R. § 7.12(a) and (a)(3). Plaintiffs, however, claim that this notice was insufficient to alert them to the consequences of withdrawing their claims for two reasons. First, the notice was given to them when they filed their complaint and at that time there were three other individuals with them as a class. Second, Plaintiffs claim the notice was insufficient because "Plaintiffs' EEO Officer knew that the Plaintiffs were filing their withdrawals in order to file in US District Court [and did not inform them that withdrawal of their complaints would prevent such a filing]." (ECF No. 22 at 7.) Plaintiffs' arguments are not well taken.

Simply because the Withdrawal Form was given to Plaintiffs when there were a few more complainants does nothing to alter the fact that Plaintiffs received a sufficient notice of their rights and responsibilities. Nothing in the notice indicates that it was specifically provided to them as class members. Nor is there any other indication that the form was not relevant to each individual claimants claim. Indeed, the opposite. The notice throughout refers to the individual plaintiff and one paragraph specifically indicates to the claimant that the notice applies also to groups of employees. (ECF No. 13-3) ("If your complaint alleges that a group of employees, . . . have been or are being adversely affected by an agency personnel management policy or practice that discriminates . . . you may want to consider filing a class complaint. . . .").

As to Plaintiffs' contention that Defendant is responsible for not informing them at the time they withdrew their complaints that they would be prohibited from filing in federal court, Plaintiffs are mistaken. It was not Defendants' employee who provided Plaintiffs with the

11

withdrawal forms or accepted the forms. It is undisputed that the EEOC provided the forms to Plaintiffs and that Plaintiffs submitted the forms to the EEOC Administrative Judges. (ECF No. 22-1 at 2-3.) The evidence before the Court shows that it was not until July 2010 that Plaintiffs informed Defendant's EEO Counselor that they had withdrawn their administrative complaints on July 9, 2009 and that they desired to have those complaints reinstated. Consequently, Defendant's EEO Counselor could not possibly be held responsible to ensure Plaintiffs knew the consequences of their actions in signing a form that the Counselor did not provide to Plaintiffs nor accept from Plaintiffs.

Moreover, Plaintiffs' argument that the EEOC's withdrawal form "should have expressly explained its effect on private suit rights" is without merit. The Sixth Circuit has held that "the ambiguity [in the EEO letters] does not amount to the type of affirmative misconduct which would justify the application of the equitable tolling doctrine.[2]" *Burzynski v. Cohen*, 264 F.3d 611, 620 (6th Cir. 2001) (ADEA claim not equitably tolled when the plaintiff relied on two letters from EEO officers at the Defense Finance and Accounting Service that stated he may have six years within which to file an age discrimination suit, when in fact, he only had 90 days).

Finally, Defendant argues that Plaintiffs have not exercised diligence in pursuing their complaints. Plaintiffs waited nine months from when their complaints were dismissed before they submitted requests to their respective Administrative Judges to reopen their complaints and over one ear to request relief from Defendant's EEO Department. Plaintiffs have not presented any explanation or rationale for why they waited so long to pursue an attempt to reopen their complaints. This Court finds Defendant's argument persuasive and agrees that in these

---

[2]As discussed below, the doctrines of equitable estoppel and equitable tolling both require affirmative action on the part of the defendant.

particular circumstances, Plaintiffs' actions are not indicative of the exercise of due diligence.

Accordingly, even when accepting as true Plaintiffs' allegations and drawing all reasonable inferences in their favor, they have failed to raise a genuine issue of material fact as to whether the doctrine of equitable estoppel may be applied in this action.

## 2. Statute of Limitations

In Plaintiffs' Memorandum in Opposition to Defendant's Motion, Plaintiffs argue that this Court should invoke the doctrine of equitable tolling to permit them to file this action outside of the time permitted by the applicable statute of limitations. With regard to this doctrine, the Sixth Circuits directs:

> [T]he Supreme Court has made clear that tolling in a Title VII context should be allowed "only sparingly." *Irwin* [*v. Dep't of Veterans Affairs*], 498 U.S. [89,] 96[, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990)]. This Court has similarly noted that equitable tolling is "available only in compelling cases which justify a departure from established procedures." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989).
>
> In considering whether equitable tolling should apply, we generally look at five factors: (1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint. *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not exclusive bases for equitable tolling, however, and the decision to allow equitable tolling is made on a case-by-case basis. *Seay* [*v. Tenn. Valley Auth.*], 339 F.3d [454] 469 [(6th Cir. 2003)] (citations omitted).

*Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003)

Plaintiffs argue that they missed all of the deadlines in this action because Defendant's EEO Counselor failed to apprise them of their rights under 24 C.F.R. § 7.12 and [in his 'follow-up letters'] failed to properly apprise them of any potential deadlines that the Plaintiffs could consider." (ECF No. 22 at 12.) Equitable tolling however, like equitable estoppel, requires

13

"affirmative representations by the employer that misled a Title VII complainant into missing a filing deadline[.]" *Id.* at 436 (citing as examples, *Leake v. Univ. of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979); *Irwin*, 111 S. Ct. at 458 (noting that the court has allowed equitable tolling in situations where the claimant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").

Even if the Court had found that Defendant had taken some affirmative step to mislead Plaintiffs as to the consequences of their withdrawal of their administrative complaints, the equitable tolling factors do not weigh in Plaintiffs' favor so as to make this the compelling case to justify departure from the established procedures. Specifically, the first factor addresses whether Plaintiffs had actual notice of the applicable statute of limitations. As the Court explained above, the November 13, 2007, "Notice of Rights and Responsibilities" Plaintiffs received from Defendant complied with the notice requirements of 24 C.F.R. § 7.12 and the fact that they were provided the notice when they were claiming discrimination as part of a small group does nothing to change the fact that they received the notice. That notice provided Plaintiffs with actual knowledge of the applicable statute of limitations.

Even if Plaintiff did not have actual knowledge, under the second factor Plaintiffs had constructive knowledge at least as early as September 29, 2010, when they retained their current counsel. *See Steiner*, 354 F.3d at 436 ("'Constructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period.'") (quoting *Weigel v. Baptist Hosp.*, 302 F.3d 367, 376 (6th Cir. 2002)).

The third factor weighs slightly against Plaintiffs because, as explained above, Plaintiffs waited a significant period of time to seek reopening of their complaints. Plaintiffs have not provided any explanation for their wait to attempt to reopen their administrative complaints.

With regard to the fifth factor, it too weighs against Plaintiffs because their alleged ignorance of the time constraint or requirement to exhaust their administrative remedies is not reasonable. As stated previously, Plaintiffs were provided a proper notice of their rights and responsibilities in written format on November 13, 2007. Plaintiffs cannot now reasonably plead ignorance of the time constraints or requirement to exhaust their administrative remedies.

Finally, as to the fourth factor, Defendant argues that it would be prejudiced by equitable tolling in this case as the underlying allegations arose four years ago and the case had been administratively closed for a year before Plaintiffs contacted Defendant to reopen their complaints. While the Court is not persuaded that these circumstances result in actual prejudice to Defendant, it is of no consequence here because "[t]he Supreme Court has held that the absence of prejudice to the defendant employer 'is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.' " *Steiner*, 354 F.3d at 437 (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984) (per curiam)). Therefore, without some other factor weighing in Plaintiffs' favor, which is not present here, this factor alone is not sufficient.

Accordingly, even when viewing all of the evidence in the light most favorable to Plaintiffs and making all reasonable inferences in their favor, they have failed to raise any genuine issue of material fact as to whether the doctrine of equitable tolling is appropriately invoked in this action.

**B. Stay**

Plaintiffs ask that, if this Court finds Defendant's Motion well taken, it stay this action pending a response from the EEOC's Office of Federal Operations to Plaintiffs' request to reinstate their administrative complaints. As the Court has explained, however, Plaintiffs must

exhaust their administrative remedies in order to maintain an action in this Court.

## V. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion (ECF No. 2) and **GRANTS** Plaintiffs' Second Motion to Supplement their Memorandum in Opposition to Defendant's Motion to Dismiss, *Instanter* (ECF No. 28). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT COURT**